# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KEVIN B. CARTER, 303424** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 09-2551** |
| **BURL CAIN, WARDEN** | * | **SECTION: "A"(6)** |

## SECOND REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to Title 28, United States Code, Sections 636(b)(1)(B) and (C), and, as applicable, Rule 8(b) of the Rules Governing Section 2254 cases. The undersigned Magistrate Judge issued a Report and Recommendation in the above-captioned matter on January 13, 2011. (Rec. Doc. 9). Therein, the court found that petitioner's federal filing of his habeas corpus petition on January 30, 2009, was too late to meet the one year limitations requirements of Title 28, United States Code, Section 2244(d)(1) and (2). The deadline for filing the federal petition was determined to be April 8, 2006. Based

upon these findings, the undersigned Magistrate Judge recommended that Kevin B. Carter's petition be **DENIED WITH PREJUDICE** as untimely.

On January 28, 2011, petitioner Carter filed his Objections to the Magistrate Judge's Report and Recommendation, asserting for the first time that he had actually submitted a federal habeas application to this Court on or about November 14, 2005.  After further legal research and review of the record, this Magistrate Judge issued an Errata/Report and Recommendation on February 10, 2011, (Rec. Doc. 11) therein finding that Carter's federal application was timely filed. Accordingly, this Magistrate Judge vacated the previous Report and Recommendation. The District Court approved and adopted the Report and Recommendation as amended by the Errata/Supplemental Report and Recommendation as its own opinion. (Rec. Doc. 12.)  The District Court ordered that Kevin B. Carter's federal habeas petition was timely filed; that the matter be recommitted to the Magistrate Judge for disposition; and, that the Respondent file a supplemental response addressing the merits of Kevin B. Carter's claims.

The respondent has filed its response and concedes that the issues have been exhausted in the state's highest court.

For the following reasons, it is hereby recommended that the instant petition be **DENIED WITH PREJUDICE**.

## Background

Petitioner, Kevin B. Carter, is a state prisoner incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, where he is serving concurrent sentences for 198 years, 99 years, 40 years, 20 years and 7 years, having been convicted by a jury of two counts of armed robbery, one count of first-degree robbery (on one of the armed robbery charges), one count of attempted first-degree robbery (on the first degree robbery charge), and one count of simple robbery, respectively.[1] Petitioner's federal claims are that: 1) his constitutional right to a fair trial was violated when African-Americans were excluded from the jury because of their race; 2) his 5th and 6th Amendment rights were violated when the state was allowed to introduce inadmissible evidence at trial; and, 3) he was denied the effective assistance

---

[1]Petitioner was found not guilty on one charge of armed robbery.

of counsel when trial counsel failed to object to the State's improper remarks during closing argument.[2]

## Procedural History

On April 5, 2000, petitioner, Kevin B. Carter, was charged by bill of information with four counts of armed robbery, one count of attempted first-degree robbery, and one count of simple robbery.[3]  On May 9th, 2000, petitioner was found guilty as charged of two counts of armed robbery, one count of attempted first-degree robbery, and one count of simple robbery. He was also found guilty of one count of the lesser-included offense of first degree robbery; and not guilty of one count of armed robbery.  Petitioner was subsequently sentenced, on December 1, 2000, as a second offender (after a multiple bill hearing) to 198 years on one count of armed robbery, to 99 years on the second count of armed robbery, to 99 years on the count of first degree robbery, to 20 years on the count of attempted first-degree robbery, and to 7 years on the simple robbery count,  all sentences to be served concurrently and without benefit of parole, probation or  sentence.[4]

_____

[2]Rec. Doc. 1., Federal Petition.

[3]State Rec. Vol. 1 contains a copy of the docket master and bill of information.

[4]See State Rec. Vol. 1 (docket entry dated December 1, 2000).

Petitioner appealed his convictions to the Louisiana Fourth Circuit Court of Appeal.  He claimed that the court erred in adjudicating him a multiple offender and that his sentences are excessive.  On January 16, 2002, that court affirmed his convictions, amended the sentence as to his simple robbery conviction[5], and vacated and remanded the sentence as to his first-degree robbery conviction as illegal.[6] The Louisiana Supreme Court denied his request for supervisory writs on February 7, 2003.[7]  On remand from the Court of Appeal's decision, the district court resentenced petitioner as to count 2 (first-degree robbery) to forty years at hard labor, to be served concurrently with the other sentences and without benefit of parole, probation or suspension of sentence.  Petitioner's request for reconsideration of the sentence was also denied.[8] Petitioner appealed to the Louisiana Fourth Circuit Court of Appeal,

---

[5]The court deleted, as illegal, the provision that imposed the 7 year sentence for simple robbery without benefits. **State v. Carter**, (unpublished opinion) 2001-KA-1063, pages 4-5 (La. App. 4th Cir., 1/16/02). The unpublished opinion is located in State Rec. Vol. 2.

[6]**Ibid.**  Therein, the court noted that the maximum sentence for first degree robbery was 40 years, not 99 as the district judge had given, thus the sentencing on that count was vacated and remanded for re-sentencing.

[7]**State v. Carter,** 836 So.2d 94 (La. 2/07/03), a copy of which can be located in State Rec. Vol. 2.

[8]*See* Docketing entry dated 2/14/2002, State Rec. Vol. 1.

which affirmed the trial court on March 26, 2003.[9]  Petitioner's subsequent writ application to the Louisiana Supreme Court, postmarked on April 24, 2003, was denied on November 21, 2003.[10]

On December 9, 2003, petitioner signed and dated his first state post-conviction application, which he filed with the state district court.[11]  On February 2, 2004, the district court denied petitioner's application.[12]   Petitioner sought a supervisory writ before the Louisiana Court of Appeal, Fourth Circuit, but the writ was denied on April 26, 2004.[13] The Louisiana Supreme Court denied petitioner's related writ application on April 8, 2005.[14] Finally, petitioner filed the instant federal habeas petition in this court on or about November 7, 2005.

---

[9]**State v. Carter,** 841 So.2d 106 (Table); a copy of this unpublished opinion is located in State Rec. Vol. 3.

[10]**State v. Carter,** 860 So.2d 541 (La. 11/21/03);a copy of this unpublished opinion is located in State Rec. Vol. 3.

[11]A copy of which is located in State Rec. Vol. 1.

[12]A copy of the Judgment is located in State Rec. Vol. 1.

[13]*See* decision rendered in Writ No. 2004-K-0434, located in State Rec. Vol. 4.

[14]*See* decision rendered in Writ No. 2004-KH-1492, located in State Rec. Vol. 4.

## Statement of Fact[15]

At trial, Ms. Desiree Neumeyer testified that on November 2, 1999, at approximately 3:00 p.m. she was with her fiancee, Troy Emmons, while he made his collection rounds; he is an insurance agent.  She was waiting in his truck while he was visiting a client at home when she saw a man ride past on a bicycle.  He turned around, returned to the truck, and entered the driver's side.  The man demanded her purse or money, and when she was slow to give it to him, he opened his jacket to show her his gun.  She handed over her purse.  Mr. Emmons, on observing the incident, walked toward the truck, and the gunman said to him, '[I]f you don't back up, I'll kill her."  Ms. Neumeyer warned Mr. Emmons not to come near because her assailant had a gun.  As the gunman backed out of the truck, he demanded Mr. Emmons' wallet.  Mr. Emmons gave him the currency from the wallet, and the man got on a bicycle and left.  The couple called 911 and followed the gunman until he turned around toward them; they then went the other way.  When asked to select her assailant's picture from a photographic lineup, Ms. Neumeyer pointed to two pictures that resembled the man, but she could not decide between them.

---

[15]The Statement of Fact was taken from the unpublished opinion issued by Louisiana Fourth Circuit Court of Appeal in **State v. Carter,** 2001-KA-1063 (La. App. 4th Cir. 01/16/02) 810 So.2d 586 (Table); a copy of the unpublished opinion is found in the State Record, Vol. 2.

Mr. Emmons testified at trial that he was very upset at seeing someone in his truck with Ms. Neumeyer.  He ran to the truck and saw that she had tears running down her cheeks; she told him not to do anything because the man had a gun. Then the gunman said, "Don't come any closer.  I'll kill her.  I swear, I'll kill her." Mr. Emmons backed up, and the gunman took Ms. Neumeyer's purse.  The gunman asked for Mr. Emmons' money and was given everything in Mr. Emmons' wallet. Under cross-examination, Mr. Emmons testified that he never saw the gun.

Alan Howland testified at trial that on November 5, 1999, at approximately 11:45 a.m., he visited a customer at 2500 Tupelo Street.  As he walked back to his car, he saw a man on a bicycle coming toward him.  The man stopped near Mr. Howland and said, "Be quiet.  Give me your wallet, or I'll kill you."  Surprised, Mr. Howland asked the man to repeat himself, and again the demand and the threat were made.  Mr. Howland said, "You've got to be kidding me.  It's the middle of the daytime."  At that the man took out a knife and swung it toward Mr. Howland, who handed over his wallet.  As the man got on his bicycle to leave, Mr. Howland called out, "Drop the wallet.  Take the money."  The gunman did so as he peddled off down South Dorgenois Street.  When Mr. Howland was shown a photographic lineup, he selected Carter's picture and named him as the man who robbed him.

Reverend Calvin J. Young testified that he was filling his car with gasoline on November 7, 1999, at approximately 6:00 p.m. when a man--who had his hand in his pocket as though he had a gun--put his finger in Reverend Young's side. He said, "Give me your money...Don't holler.  I'll kill you."  Reverend Young did not believe that the man had a gun, and grabbed his hand.  A scuffle began, and the young man pushed Reverend Young to the ground and got on top of him.  At that time, a third person came to the Reverend's aid and pulled the young man off of him.  The police arrived, and the man was arrested.

Ms. Bertha Bryant testified at trial that she was leaving her job at the Dr. Martin Luther King Elementary School for Science and Technology on the evening of October 26, 1999, when she noticed a man on the other side of the street. He turned around so that he approached her from her back and "jerked her purse" away from her and ran with it.  Her purse contained her credit cards, driver's license, cellular phone, and beeper.  She did not know Carter and did not give him permission to take her purse.  Sometime later, after viewing a photographic lineup, she selected Carter's photo and named him as the man who took her purse.  When asked on cross-examination why she had not signed the back of Carter's picture when she identified

him, Ms. Bryant replied that she was "so nervous and upset–it was devastating, really."

Ms. Juanita Grant, who works with Ms. Bryant, testified that she was locking the back gate to the school after Ms. Bryant walked out.  Ms. Grant saw the man who took Mr. Bryant's purse.  She too was shown a photographic lineup and selected Carter's photograph.

Detective Kenneth Quetant testified that he investigated several robberies occurring in the Fifth District.  The detective interviewed Carter and took a statement from him.  The statement was played for the jury.  (The audiotape is part of the record, and on it Carter describes the robberies of Ms. Neumeyer, Mr. Emmons, Mr. Howland, Reverend Young and Ms. Bryant, but he denied robbing James Temple.)

## Standard of Review

This habeas proceeding is subject to the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, because Carter filed his federal petition on November 7, 2005, well after AEDPA's effective date.  See **Lindh v. Murphy,** 521 U.S. 320, 335–36 (1997).  "Under AEDPA, if a state court has adjudicated a habeas petitioner's claims on the merits, he may receive relief in the federal courts only where the state court decision 'resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" **Rivera v. Quarterman**, 505 F.3d 349, 356 (5th Cir. 2007), (quoting 28 U.S.C. § 2254(d)), *cert. denied*, -- U.S.--, 129 S.Ct. 176, 172 L.Ed.2d 44 (2008).

"A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." **Gray v. Epps**, 616 F.3d 436, 439 (5th Cir. 2010) cert. denied, 131 S. Ct. 1785, 179 L.Ed.2d 657 (2011)(citing *Williams v. Taylor*, 529 U.S. 362, 404–08, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000)).  To merit habeas relief, a state habeas court's application of federal law must be not only incorrect but "objectively unreasonable." **Renico v. Lett**, -- U.S. --, 130 S. Ct. 1855, 1865, 176 L.Ed.2d 678 (2010).  *See also*, **Schriro v. Landrigan**, 550 U.S. 465, 473, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007)( "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.")

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); *see also* **Hill v. Johnson,** 210 F.3d 481, at 485; 28 U.S.C. § 2254(e)(1).

## **Denial of Fair Trial**

Petitioner claims that he was denied a fair trial because the prosecutor used his peremptory strikes to exclude African-Americans from serving on his jury. The law is clear that the use of peremptory challenges to exclude persons from serving on a trial jury based on their race or gender violates the Equal Protection Clause of the Fourteenth Amendment.  **Batson v. Kentucky,** 476 U.S. 79, 96-98, 100 S.Ct. 1712, 1723 (1986).  The standards for assessing a prima facie case regarding whether a prosecutor has discriminated in selecting a defendant's jury was set forth in **Batson v. Kentucky,** which held that: (1) the Equal Protection Clause forbids prosecutor from challenging potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable to impartially consider the State's case against a black defendant, and (2) to establish a prima facie case of purposeful discrimination in selection of the petit jury, defendant must first show that he is a member of a

cognizable racial group, that prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race and that the facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the venire men from the petit jury on account of their race.  Once a petitioner has established a prima facie showing of discrimination, the burden shifts to the State to rebut that showing by providing race-neutral reasons for the exercise of its peremptory challenges.  **Batson v. Kentucky,** 476 U.S. at 97; 106 S.Ct. at 1723.

Petitioner claims that the state prosecutor used his peremptory challenges to strike African Americans as potential jurors because of their race.  The trial transcript does not contain a copy of the voir dire examination.  However, page 3 of the trial transcript[16] opens as follows:

> (Voir dire examination was conducted without objection.  Twelve jurors and one alternate juror were selected without objection and duly sworn.  The pleadings were read to them.) (Opening statement was given by Mr. Andre Jeanfreau for the State with no objections being lodged.  Opening statement was given by Mr. Keith Hurtt for the Defense with only one objection being lodged, as follows:)

**MR. HURTT:**

---

[16]See State Record, Vol. 2, Transcript of Trial page 3, May 9, 2000.

13

There will be some statements in an alleged confession.  I
hope some of you have been military, because you know
the training you received how incredibly coercive the
environment is –

**MR. JEANFREAU**:

Objection.

**THE COURT:**

I'll overrule that, that limited comment.  I do not find that
it's yet reached the level of argument.

(Opening statements were completed without further objection.)

**THE COURT:**

Thank you.  First witness for the State, please.

Petitioner Carter argues that he cannot evaluate the extent of his claim,

that the prosecutor's exclusion of jurors for race reasons, because he has not been

provided a copy of the trial transcript.[17]   Review of the state record shows that a

transcript of the voir dire selection proceedings is not contained in the record.  Further,

it does not appear that this issue was raised on direct appeal.  Moreover, review of the

record indicates that voir dire examination was conducted without objection.[18] Further

---

[17]See Fed. Record, Doc. No. 1, Petition page 13.

[18]See State Rec., Vol. 2, Trial Transcript, May 9, 2000.

14

review of the trial minute entry indicates: that the state excluded five jurors; that the defense excluded ten jurors; and, that the court excluded two jurors for cause and excluded two jurors by consent.[19]  There is nothing in the record which indicates the race of the excluded jurors nor of the racial composition of the jury venire or the final trial jury.  Thus, the State argues that petitioner's claim is unsupported and conclusory and that as such "[m]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding," **King v. Cain,** Civil Action No. 97-556, 1999 WL 52077, at *2 (E.D. La. Jan. 29, 1999).  See **Ross v. Estelle,** 694 F.2d 1008, 1011 (5th Cir. 1983); (absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition); also see, **Black v. Quarterman,** Civil Action No. 05-26, 2007 WL 4105586, at *5 (N.D. Tex. Nov. 16, 2007)(Petitioner's claims constitute conclusory allegations unsupported by specifics or probative evidence in the record.").

Petitioner requests that he be given an evidentiary hearing in this Court to develop his **Batson** claim which is unsupported by the record and by federal law.  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district

---

[19]See State Rec., Vol. 2, Minute Entry, May 9, 2000, page 17.

court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable fact finder jury would have found the applicant guilty of the underlying offense.  (28 U.S.C. § 2254(e)(2)(B)).

Petitioner has failed to show that he is entitled to a federal evidentiary hearing in that he could have developed the factual basis of his claim in state court, but failed to do so.

Petitioner first brought his **Batson** claim in his application for post-conviction relief (PCR).  He argues that he should have been given an evidentiary hearing to resolve his constitutional claims, which could not be resolved without a transcript of his trial.  Petitioner filed a Motion for Production of Trial Transcript and All Other Documents in connection with his PCR Application.[20]  The trial court denied petitioner's PCR application on February 2004.  The Louisiana Court of

---

[20]See State Record, Vol. 1, for a copy of the Motion.

Appeal, Fourth Circuit denied the writ on April 26, 2004, and said: "This Court finds no error in the judgment of the district court denying relator's application for post-conviction relief and request for trial and sentencing transcripts."[21]  The Louisiana Supreme Court denied petitioner's writ on April 8, 2005.

The state properly pointed out that the petitioner failed to present any evidence to substantiate his claim and that as such, the showing made by him is insufficient to prove that the Louisiana Courts unreasonably applied **Batson v. Kentucky** in denying relief.  Petitioner's claim is meritless.

<u>**Admission of Involuntary Confession**</u>

Petitioner claims that the statements taken by law enforcement officers at the time of his arrest were obtained illegally and were erroneously introduced during his trial, in violation of his Fifth Amendment privilege against self-incrimination.  Thus, petitioner argues that his statements were not freely and voluntarily given because he was forced, coerced and threatened to give incriminating statements.

---

[21]See State Record, Vol. 4, for a copy of the ruling, In Re: **Kevin B. Carter,** No. 2004-K-0434.

The Fifth Amendment to the Constitution of the United States provides, in pertinent part, that: "no person ... shall be compelled in any criminal case to be a witness against himself." The privilege against self-incrimination applies to the states through the Fourteenth Amendment. See **Malloy v. Hogan,** 378 U.S. 1, 8 (1964). In **Miranda v. Arizona,** 384 U.S. 436, 478-79 (1966) the Supreme Court announced that, before law enforcement officials questions a suspect who is in custody, they must inform the suspect that: he has the right to remain silent; his statement may be used against him at trial; he has the right to the presence of an attorney during questioning; and, if he cannot afford an attorney, one will be appointed for him. In order for a prosecutor to introduce a defendant's custodial statements at trial, the prosecutor must show that the statements were obtained in compliance with **Miranda v. Arizona**.

Review of the record shows that a hearing on petitioner's Motion to Suppress Evidence Confession and Identification and Preliminary Hearing was conducted on April 18, 26 and 27, 2000.[22] The prosecutor called seven witnesses as follows: Calvin Young, Bertha Bryant, Alan Howland, James Temple, Troy Emmons, Desiree Neumeyer and Officer Kenneth Quetant. (The above named witnesses also

---

[22]See State Record, Vols. 1 and 3, Minute Entries dated April 18, 200, April 26, 2000, and April 27, 2000.

testified at the trial.)  The defense did not call a witness to testify during the motion

hearing proceedings.

Officer Kenneth Quetant gave testimony concerning the statements made

by petitioner.[23]  Officer Quetant stated that he spoke to petitioner at the Fifth District

Station where he Mirandized and asked the petitioner if he wanted to make a

statement.  (T. 50.)  The rights of arrestee form was read to petitioner as follows:

> Q     And could you articulate and read for us what rights are
> written out there that were read to Mr. Carter?
>
> A     He was read, "You need not make any statements, that is,
> you have the right to remain silent.  Anything you say may
> be used against you in a trial.  You have a right to consult
> and obtain the advice of an attorney before answering any
> questions.  If you cannot afford an attorney, the court will
> obtain an attorney to represent you and advise you.  You
> have the right to have your attorney or an appointed
> attorney present at the time of any questioning or giving of
> any statements."   And then he was asked, "do you
> understand what I just read to."  The box is check off, "yes"
> and his signature is right below that.
>
> Q     Now, was he forced, threatened or coerced in any way into
> making this statement?
>
> A     No, sir.

---

[23]See State record, Vol. 2, pages 45-56, of the transcript of the proceedings taken on April 18 and 26, 2000.  Hereinafter referred to as T. ___.

> **Q**    Was he given any promises or any inducements?  Did you tell him you would do anything for him if he gave a statement?
>
> **A**    No, sir.
>
> **Q**    Was this statement tape recorded?
>
> **A**    Yes, sir, I think it was.
>
> **Q**    Was it then transcribed?
>
> **A**    Yes, it was.
>
> **Q**    Did you have a chance to look over the transcript to verify it?
>
> **A**    Yes, sir, this is his statement.

(See State Record, Vol. 2, pages 51-52, Transcript of proceedings taken on April 18 and 26, 2000.)

During cross examination, Officer Quetant stated that the petitioner had been Mirandized three times prior to the taping of Carter's statement.[24]  Officer Quetant also testified that he did not force Carter to sign the rights of arrestee form.[25]

---

[24]See State Record, Vol. 2, pages 55-56, Transcript of proceedings taken on April 18, and 26, 2000.

[25]**Ibid,** page 54.

20

After hearing the testimony and considering evidence, the district judge found probable cause to substantiate the charge and denied the Motion to Suppress Evidence, Identification, and/or Statements.[26]

Review of the relevant trial testimony of Officer Quetant, during cross examination, concerning the voluntariness of petitioner's statements also shows that petitioner gave his statements voluntarily, freely and without threats and promises of leniency.[27]

Petitioner has not given any specific information nor has he alleged how his statements were involuntary and/or coerced.  Review of the record shows that petitioner did not bring this issue on direct appeal[28] but chose to bring it via an application for state post-conviction relief, which was denied.  As previously mentioned, the Louisiana Court of Appeal Fourth Circuit denied petitioner's writ and said:

---

[26]See State Record, Vol. 2, Transcript dated April 27, 2000, page 13.

[27]See State Record, Vol. 2, pages 44-48, Trial Transcript.

[28]See **State v. Carter,** 2001-KA-1063, page 5 (La. App. 4th Cir. 01/16/02.)  Copy of unpublished opinion is contained in State Record, Vol. 2.  The assignment of errors were that the district court erred in adjudicating petitioner a second felony offender and that the maximum sentences are excessive.

21

> "This court finds no error in the Judgment of the district court denying relator's application for post-conviction relief and request for the trial and sentencing transcripts."[29]

The Louisiana Supreme Court also denied relief.[30]

The state argues that petitioner's strategic choice was to delay review of the subject claim until his post-conviction proceedings.  Thus, under state law, petitioner's request for trial and sentencing transcripts was denied for failure to show a particularized need. **State ex rel. Truvia v. Criminal District Court,** 552 So.2nd 385 (La. 1989).   Therefore, petitioner's claim is meritless as he has failed to demonstrate that Louisiana Courts acted unreasonably in finding that his confession to have been voluntary.  Moreover, petitioner has failed to show that the Louisiana Courts' ruling were not in compliance with the United States Supreme Court ruling in **Miranda v. Arizona, supra**.

### Ineffective Assistance of Counsel

Petitioner's third claim is that he was denied effective assistance of counsel because his trial counsel failed to object to the prosecutor's improper remarks during closing argument, thus, rendering his trial fundamentally unfair.  According

---

[29]See copy of ruling in Writ No. 2004-K-0434, located in State Record, Vol. 4.

[30]See ruling in Writ No. 2004-KH-1492, located in State Record, Vol. 4.

to petitioner, the prosecutor argued to the jurors not to insult these people by returning a verdict of guilty to attempted armed robbery, but, rather that if they were going to insult them they should just come back with a not guilty verdict.  Petitioner also claims that the prosecutor also told the jurors, "Don't fool yourself this is an armed robbery, nothing less."[31]

The state argues that the prosecutor's statements were presumably made in relation to one of the charged counts of armed robbery.  Additionally, the state maintains that petitioner failed to provide any record evidence pertaining to this claim.[32]  The transcript of the closing argument is not contained in the state record.  However, review of the trial transcript shows that only one objection was made by the defense during closing argument.  Petitioner's attorney objected to the playing of the petitioner's statements during the state's rebuttal argument.  No further objection was made by the defense.[33]

The seminal Supreme Court decision regarding ineffective assistance of counsel is **Strickland v. Washington**, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80

---

[31]Federal Rec., Doc. #1, Petition, page 19.

[32]Federal Rec., Doc. #15, page 16, Supplemental Response to Petition.

[33]See State Record, Vol. 2, Trial Transcript, pages 51-52.

L.Ed.2d 674 (1984), wherein the Court held that in order to prove that counsel was unconstitutionally ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claims without addressing the other prong.

Under the deficient performance prong of the **Strickland** test, "it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  **Lockhart  v. Fretwell**, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed. 2d 180 (1993), *citing* **Strickland**, 466 U.S. at 690, 104 S.Ct. At 2066.  To prove prejudice under the **Strickland** standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland**, 466 U.S. at 694, 104 S.Ct. At 2068.  As reflected below, petitioner has failed to satisfy his burden of proof.

The Louisiana State Courts denied petitioner's claim first brought on petitioner's post-conviction application.  Assuming the prosecutor made the now complained of statements during closing argument, a review of the trial record fails

to show that the petitioner was prejudiced by the statements.  The trial evidence was strongly in favor of the convictions.

In the instant matter, petitioner has clearly failed to satisfy his burden of proof.  First, the prosecutor, during closing remarks, is allowed to comment on the evidence and, as such, there was no basis for defense counsel to lodge an objection. Under federal law, as under state law, an attorney's performance is not rendered ineffective due to his failure to raise meritless objections or arguments.  *See, e.g.,* **United States v. Kimler**, 167 F.3d 889, 893 (5th Cir. 1999)("An attorney's failure to raise a meritless argument...cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); **Sones v. Hargett**, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.")  **United States v. Gibson**,55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions.").

The claim is meritless.

## RECOMMENDATION

For the foregoing reasons, it is hereby recommended that the application for federal habeas corpus relief by petitioner, Kevin B. Carter, be **DENIED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party

has been served with notice that such consequences will result from a failure to object.  Title 28, United States Code, Section 636(b)91);  **Douglass v. United Services Auto. Ass'n**, 79 F. 3d 1415, 1430 (5th Cir. 1996)(*en banc*).[34]

New Orleans, Louisiana, this  15th  day of  August  , 2011.

LOUIS MOORE, JR.
United States Magistrate Judge

---

[34]**Douglass** referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, Title 28, United States Code, Section 636(b)(1) was amended to extend that period to fourteen days.

27